### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TROPICANA ENTERTAINMENT, LLC, | ) | |
| et al., | ) | |
| | ) | Case No. 08-10856 (MFW) |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| LIGHTSWAY LITIGATION SERVICES, LLC | ) | |
| as TRUSTEE OF TROPICANA LITIGATION | ) | |
| TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. No. 10-50289 |
| WIMAR TAHOE CORPORATION f/k/a | ) | |
| TROPICANA CASINOS AND RESORTS, INC.) | | |
| and COLUMBIA SUSSEX CORPORATION | ) | Rel. Docs. 223, 224, 225, |
| | ) | 226, 227, 233, 234, 235, |
| Defendants. | ) | 236, 237 |

### MEMORANDUM OPINION[1]

Before the Court are the Defendants' Motions in Limine, which are opposed by the Plaintiff.  For the reasons set forth below, the Court will grant in part and deny in part the Motions.

I.   BACKGROUND

On May 5, 2008, Tropicana Entertainment, LLC, and its affiliates (the "Debtors") filed voluntary bankruptcy petitions under chapter 11 of the Bankruptcy Code.  (D.I. 1.)  Pursuant to

---

[1]   The Court is not required to state findings of fact or conclusions of law on these procedural motions pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  To the extent there are material disputes of fact, the Court is reserving decision until the trial.  See, e.g., III.B infra.

the First Amended Joint Plan of Reorganization (the "Plan"), the Debtors assigned certain claims against its insiders to the Tropicana Litigation Trust (the "Plaintiff").

The Plaintiff filed this adversary action in 2010.  On November 25, 2014, the Court granted in part and denied in part the Defendants' motion to dismiss.  (Adv. Proc. D.I. 91.)  As a result, two claims remain against Defendants Wimar Tahoe Corporation ("Wimar") and Columbia Sussex Corporation ("Sussex"): (1) breach of contract and (2) breach of the covenant of good faith and fair dealing.  Those claims relate to contracts between Wimar and the Debtors for casino management services and contracts between Columbia and the Debtors for hotel management and back-office services.

On May 29, 2019, the Court denied the Defendants' motion for summary judgment, finding a material issue of disputed fact as to whether the Defendants breached those contracts by, inter alia, failing to supervise operations and understaffing the casinos and hotels.  (Adv. Proc. D.I. 211.)

The parties have completed both fact and expert discovery. On November 22, 2019, the Defendants filed five motions in limine to preclude the introduction of certain testimony and documents at trial.  The Plaintiff responded to the motions and on March 31, 2020, a notice of completion of briefing was filed.  Although the parties have not yet filed their lists of witnesses or

2

documents that they intend to present at the trial, the Plaintiff has stated that it does intend to use certain documents and to call certain witnesses (or rely on prior testimony of those witnesses).  Therefore, the issues raised by the Motions are ripe for decision.

II.  <u>JURISDICTION</u>

The Court has jurisdiction over the Motions.  In ruling on the motion to dismiss, the Court found that it had jurisdiction over this adversary proceeding because there was a close nexus between the claims and the confirmed Plan.  <u>Lightsway Litig. Servs. LLC v. Yung (In re Tropicana Entm't, LLC)</u>, 520 B.R. 455, 462-63 (Bankr. D. Del. 2014), citing <u>Binder v. Pricewaterhouse & Co., LLP (In re Resorts Int'l, Inc.)</u>, 372 F.3d 154, 168-69 (3d Cir. 2004).  Further, in its Opinion ruling on the motion for summary judgment, the Court found that the parties have stipulated to the Court's authority to enter a final order. <u>Lightsway Litig. Servs. LLC v. Yung (In re Tropicana Entm't, LLC)</u>,Case No. 08-10856, Adversary. Procedure. No. 10-50289, 2019 WL 2320810, *2 n. 10 (Bankr. D. Del. May 29, 2019), citing <u>Wellness Int'l Network, Ltd. v. Sharif</u>, 135 S. Ct. 1932 (2015).

III. <u>DISCUSSION</u>

   A.   <u>First Motion in Limine</u>

   In its first motion, the Defendants seek to preclude the
Plaintiff from introducing a report issued by the New Jersey
Division of Gaming Enforcement (the "DGE") and an Opinion by the
New Jersey Casino Control Commission (the "CCC") relating to the
denial of a license to Wimar to operate a casino at the Debtors'
property located in Atlantic City, New Jersey.

   The Plaintiff contends that the report and the opinion are
admissible under Rule 803 of the Federal Rules of Evidence
because it is a public record that contains factual findings from
a legally authorized investigation.  Fed. R. Evid.
803(8)(A)(iii).  The Plaintiff notes that the DGE and CCC are
part of the executive branch in New Jersey and were acting within
their authority.

   The Defendants do not dispute this but argue that the
documents are not admissible because (1) they contain hearsay
within hearsay, (2) the CCC opinion was the result of a judicial
(rather than an investigative) proceeding, (3) both were the
result of union and political pressure, (4) Columbia was not a
party to the investigation or proceeding, and (5) they contain no
indicia of trustworthiness.

   The Court must reject the Defendants' first contention -
that the report and opinion contain multiple instances of hearsay

4

- because Rule 803 is an exception to the general rule that hearsay is inadmissible.  Specifically, Rule 803(8)(A)(iii) provides an exception to the admissibility of hearsay for "a record or statement of a public office if . . . it sets out . . . in a civil case . . . factual findings from a legally authorized investigation."

The Court also rejects the Defendants' second contention that Rule 803(8) is not applicable because the CCC proceeding was a judicial (not an investigative) proceeding.  In support of their argument, the Defendants argue that only if a proceeding is investigative – as opposed to judicial in nature – does the Rule 803(8)(A)(iii) exception apply.  See, e.g., Hynix Semiconductor Inc. v. Rambus, Inc., Case No. CV-00-20905, 2008 WL 282376, at *3 (N.D. Cal. Jan. 28, 2008) (denying admission of FTC decision because it was "more like 'judging' than 'investigating.'").[2]

The Court is not persuaded by the analysis in Hynix and rather, is persuaded by the numerous decisions - some binding on

---

[2]    The Defendants actually cite Rambus, Inc. v. Infineon Techs. AG, 222 F.R.D. 101 (E.D. Va. 2004) for that proposition. However, the Rambus Court excluded the administrative ruling not because it was the result of a judicial-like proceeding but because it was only a preliminary decision that had to be presented to the full Commission which would make the ultimate findings of fact.  Id. at 108.  In doing so, the Rambus Court acknowledged binding authority that facts found by executive department tribunals are admissible (even though issued in "judicial-like" proceedings).  Id. at 107 (citing Zeus Enters., Inc. v. Alphin Aircraft, Inc., 190 F.3d 238, 242 (4th Cir. 1999) (holding that NTSB decision adopting ALJ's finding that aircraft was not airworthy was admissible under Rule 803(8)).

this Court - that conclude that findings of fact from executive department decisions, even though conducted in judicial-like proceedings, are admissible under Rule 803(8).  See, e.g., Chandler v. Roudebush, 425 U.S. 840, 863 n. 39 (1976) (noting that "[p]rior administrative findings" made by a Veteran's Administration examiner in a hearing on an employment discrimination claim are admissible in federal court); Henry v. Daytop Village, Inc., 42 F.3d 89, 96 (2d Cir. 1994) (findings of state department of labor ALJ in unemployment benefits hearing were admissible); In re Paducah Towing Co., 692 F.2d 412, 420 (6th Cir. 1982) (findings of ALJ in Coast Guard proceeding to revoke license of ship's captain admissible); Lloyd v. American Export Lines, Inc., 580 F.2d 1179, 1183 (3d Cir. 1978) (findings of hearing examiner in Coast Guard proceeding that included oral testimony and admission of documents relating to assault and battery charges were admissible under Rule 803(8)).

Accordingly, the Court rejects the Defendants' second contention that the findings of fact in the CCC decision are not admissible because they were issued in a judicial-like proceeding.  The Court agrees with the Defendants, however, that any conclusions of law in that decision are not admissible because the hearsay exception in Rule 803(8) is limited to "factual findings" from an investigation.

The Court also rejects the Defendants' fourth contention that the CCC decision is not admissible as to Columbia because it was not a party to the proceeding.  Rule 803(8) does not require that the party against whom the report is admitted actually be a party to or the subject of that investigative report.  Rule 803(8) makes investigative reports admissible on the assumption "that a public official will perform his duty properly." Zeus, 190 F.3d at 241.  It is not predicated on the fact that a party had an opportunity to participate in the investigation. Cf. Fed. R. Evid. 804(b)(1) (prior testimony exception to hearsay rule requires that party against whom testimony is offered had an opportunity to test that testimony at the prior hearing or deposition).  The Court will not read such a requirement into Rule 803(8).

The Defendants' third and fifth contentions are related: they assert that there is no indicia of trustworthiness in the DGE report or the CCC opinion because they contain hearsay within hearsay and they were the result of union and political pressure. The Plaintiff disputes these contentions.

The Court starts with the burden of proof.  Rule 803(8) makes public records of investigations admissible if "the opponent [of admissibility] does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B).  Thus, the burden of

showing untrustworthiness is on the party opposing the admission of the investigative report, i.e., the Defendants in this case. Baker v. Elcona Homes, 588 F.2d 551, 558 (6th Cir. 1978). It is not sufficient to meet this burden by showing that some of the evidence on which the report relied was hearsay. Paducah, 692 F.2d at 421 (concluding that opposing party failed to show that report was untrustworthy by showing that one witness's testimony was hearsay without admitting the entire transcript to show the other evidence on which the tribunal relied). Rule 803 is an exception to the hearsay rule, thereby permitting the admission of hearsay.

The Defendants cite the Third Circuit for the proposition that a report may be excluded if it includes hearsay within hearsay. Bernard v. East Stroudsburg Univ., 700 Fed. App'x 159 (3d Cir. 2017). The Bernard case is distinguishable. First, the Circuit was reviewing the District Court ruling on exclusion under an abuse of discretion standard. Id. at 167. Second, the report at issue contained only preliminary findings. Id. Third, the party seeking admission of the report admitted that it contained only hearsay. Id. The Defendants in this case do not contend that the entire record before the CCC was hearsay. In fact, several representatives of the Defendants testified before

the CCC.[3]  The Defendants fail to identify specifically what evidence considered by the CCC was hearsay and what weight the CCC gave that evidence.

The Defendants also argue that the CCC decision is untrustworthy because the CCC was subject to pressure by the local union and politicians to deny the Defendants a casino license.  The Defendants present the deposition testimony of a union representative who testified that he did oppose the license and that he caused articles critical of the Defendants to be published.  However, that evidence is insufficient to show that the CCC tribunal itself was biased or prejudiced against the Defendants.  While the union may have been biased against the Defendants, there is no evidence that bias was held by the DGE or the CCC.  Rather, it appears that the CCC rendered its opinion based on the record before the CCC, which was not limited to the position of the Union but also included testimony from representatives of the Defendants.

Thus, the Court concludes that the Defendants have not met their burden of showing that the CCC decision is untrustworthy pursuant to Rule 803(8)(A)(3).  Accordingly, the Court will deny the First Motion in Limine.

---

[3]    As noted below, the testimony of representatives of the Defendants is not hearsay under Rule 801(d)(2).  <u>See</u> III.D <u>infr</u>a.

B.    Second Motion in Limine

In their Second Motion in Limine, the Defendants seek to preclude the Plaintiff from offering the expert opinions of their damages expert, Jaime D'Almeida.  In support they argue that (1) the D'Almeida report is based on the report of the Plaintiff's liability expert, William Friedman, whom the Plaintiff is not going to present at trial and (2) the "debt pricing model" portion of the opinion is excludable under Daubert because it is not founded on any scholarly method or other expert's opinion; in fact, the Defendants contend that Mr. D'Almeida admitted it has never been used by any other expert, including himself.

The Plaintiff disagrees with the Defendants' assertion that D'Almeida's report is based only on Mr. Friedman's expert opinion.  The Plaintiff asserts that it will prove liability at trial and that it does not need Mr. Friedman to do so.  Once it has established liability, the Plaintiff contends that D'Almeida's opinion as to the damages arising from that liability will be admissible.

The Court agrees with the Plaintiff on this point.  "Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.  See Rules 702 and 703."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993).  Mr. D'Almeida's expert report is based on facts upon which he relied

10

in forming his damages opinion.  In the event that the Plaintiff establishes those facts, then Mr. D'Almeida's opinion based on that evidence is admissible.

Further, the Plaintiff contends that the debt pricing model portion of Mr. D'Almeida's expert report is not a novel theory but is widely used to calculate the change in value of debt.  It notes that Mr. D'Almeida explained at his deposition that he used that model as a check on his calculation of the change in value of equity, because both change in tandem.  At any rate, the Plaintiff argues that Mr. D'Almeida's theory can be tested at trial.

The Court agrees with the Plaintiff's last point.  The trial is a bench trial, not before a jury, and therefore exclusion of testimony on Daubert grounds now, before the Court has had the chance to evaluate the direct (and cross) examination of the expert witness, is not the best way to assess the reliability of the expert's opinion.

> The court believes that these issues [the reliability of the expert's methodologies and their fit with the facts of the case] will best be resolved at trial rather than now in writing or following a Daubert hearing sometime prior to trial.  As this case will be a bench trial, the court's 'role as a gatekeeper pursuant to Daubert is arguably less essential' . . . . Indeed, 'vigorous cross-examination [and] presentation of contrary evidence' will provide the best means of attacking [the expert's] report, as opposed to the court's conducting a line-by-line analysis of the report now.  If the court examined the report now as plaintiffs urge, the court's determinations regarding the veracity, reliability, or weight of isolated

11

statements in the report would be without the benefit
of the context to be provided by other evidence, the
context in which the report as a whole must be
considered.

Clark v. Richman, 339 F. Supp. 2d 631, 648-49 (M.D. Pa. 2004)
(citations omitted).

Accordingly, the Court will deny the Second Motion in
Limine, with the caveat that the Defendants may move at trial to
exclude the expert's testimony after cross-examination.

C.    Third Motion in Limine

Related to the First Motion, the Third Motion in Limine
seeks to exclude the admission of the New Jersey Court opinions
upholding the CCC decision denying a casino license to Wimar.
The Defendants argue that the judicial decisions are not
admissible under res judicata or collateral estoppel grounds
because the action in New Jersey did not involve the same parties
or same factual or legal issues.  Columbia, in particular, argues
that it was not a party to the appeals.  The Defendants also
argue that the issues relevant to the appeals are different from
the issues in the adversary.  The appeals dealt with whether the
denial of the casino license was justified not whether Wimar or
Columbia breached their contracts with the Debtors.  The
Defendants further contend that the opinions are hearsay and not
admissible under Rule 803(8) because they are clearly judicial
decisions and not investigative reports.

12

The Plaintiff argues that the Motion is premature because it currently does not intend to offer the Opinions into evidence. However, it reserves the right to offer them if the Defendants seek to collaterally attack the CCC decision which was affirmed by the New Jersey Courts.

The Court agrees with the Defendants that the New Jersey Court Opinions are not admissible under Rule 803(8) because they are judicial decisions and not investigative reports. See, e.g., Int'l Land Acqs., Inc. v. Fausto, 39 Fed. App'x 751, 756 (3d Cir. 2002); Nipper v. Snipes, 7 F.3d 415, 417 (4th Cir. 1993). However, the Court concludes that they are admissible (not for the truth of what they say) but for notice of the fact that they were entered. Michael v. Quaker Valley School Dist., Civ. A. No. 2:16-cv-00473, 2019 WL 1349556, at *2, n.4 (W.D. Pa. March 26, 2019) (statements offered in support of summary judgment were not hearsay because they were offered, not for the truth of what was stated, but to show that plaintiff had notice of them). Cf. Fed. R. Evid. 801(c)(2). The Court need not address whether they are admissible for any other purpose, until and unless a party seeks to admit them.

Accordingly, the Court will grant in part and deny in part the Third Motion in Limine.

13

D.   <u>Fourth Motion in Limine</u>

In the Fourth Motion in Limine, the Defendants seek to
exclude the CCC hearing transcripts and testimony elicited in
that proceeding.  The Defendants argue that the prior testimony
before the CCC is not admissible under Rule 804 because (1) there
is no evidence that the declarants are unavailable and (2)
neither Columbia (who wasn't even a party to the CCC proceeding)
nor Wimar had a "similar motive to develop [that testimony] by
direct, cross, or redirect examination."  Fed. R. Evid.
804(b)(1)(B).

The Plaintiff responds that the transcript is admissible
under Rules 801 and 804.  The Plaintiff notes that many of the
witnesses who testified at the CCC proceeding, and particularly
Mr. Yung, are representatives of the Defendants.  Consequently,
it argues that the prior testimony is not even hearsay under Rule
801.  Further, the Plaintiff asserts that it has not determined
what parts of the transcript, if any, it intends to offer at the
trial.  Therefore, it argues that the Defendants' Motion is
premature.

The Plaintiff does ask the Court to decide, nonetheless,
that the transcript would be admissible under Rule 804 as to
declarants who are not representatives of the Defendants to the
extent they are not available to testify at trial because the
issues extant at the CCC were the same issues that are relevant

14

here: namely, whether the Defendants mismanaged the hotel and casino properties.

The Court agrees with the parties that a ruling on the issue of admissibility of any part of the CCC transcript is ripe and will facilitate the parties' preparation for, and presentations at, the trial.

With respect to any witness who testified at the CCC hearing who is a representative of the Defendants, the Court agrees with the Plaintiff that the testimony (at the CCC hearing or otherwise) is not hearsay and is admissible under Rule 801 regardless of availability.  Fed. R. Evid. 801(d)(2).  Further, if any witness who testified at the CCC hearing is called to testify at the trial in this matter, his prior testimony may be used to impeach him or for any other reason set forth in Rule 801(d)(1).

With respect to witnesses who do not fall into either of those categories, the Court addresses the two arguments presented by the Defendants to exclude that testimony as follows.

1.  <u>Unavailability</u>

The Defendants argue that the Plaintiff has not met the standard under Rule 804 to show the declarants are now unavailable.  They contend that "unavailable" under Rule 804 requires a showing that the Plaintiff "has not been able, by process <u>or other reasonable means</u> to procure" their attendance at

trial.  Fed. R. Evid. 804(a)(5) (emphasis added).  The Defendants

contend that the Plaintiff has made no such showing.

The Plaintiff responds that unavailability under Rule 804 is

the same as that under Rule 32 of the Federal Rules of Civil

Procedure: namely, that the witness is beyond the subpoena power

of the Court.  Wilson v. Seven Seventeen HB Philadelphia Corp.

No. 2, Civ. A. No. 99-CV-1729, 2003 WL 22709073 (E.D. Pa. Nov.

14, 2003).

The Court agrees with the Plaintiff.  As noted by the Wilson

Court:

> "In civil cases, it has long been the rule that
> inability to procure attendance by 'process or other
> reasonable means' is satisfied by demonstration of
> inability to serve a subpoena." Zenith Radio Corp. v.
> Matsushita Elec. Indus. Co., 505 F. Supp. 1190, 1249
> (E.D. Pa.1980), aff'd in part and rev'd in part on
> other grounds, 723 F.2d 238 (3d Cir. 1983); AEL Indus.,
> Inc. v. Alvarez, No. 88-0391, 1989 WL 97394, at *2
> (E.D. Pa. Aug. 17, 1989) ("A witness who is beyond the
> subpoena power of the court is unavailable."). See
> also Aubrey Rogers Agency, Inc. v. AIG Life Ins. Co.,
> No. 97-529, 2000 WL 135129, at *2 (D. Del. Jan. 13,
> 2000) (noting that courts distinguish between the
> unavailability of fact witnesses and expert witnesses
> and find fact witnesses unavailable solely because the
> witnesses are beyond the subpoena power of the court).
> Accordingly, we conclude that any witness outside the
> subpoena power of this Court (within 100 miles of this
> District) is unavailable under Rule 804(a)(5) and their
> testimony may be admissible under the "former
> testimony" exception to the hearsay rule.

Wilson, 2003 WL 22709073, at *4.

Thus, to the extent any of the witnesses who testified at

the CCC hearing are beyond the subpoena power of the Court, the

16

Court concludes that they are unavailable under Rule 804.

    2.   Similar Action

The Defendants argue, however, that the CCC transcript is not admissible because the Defendants did not have a similar motive or opportunity to elicit testimony in the CCC proceeding that is relevant to the issues in this case because it was before the adversary complaint was filed and the issues were significantly different.  See, e.g., United States v. DiNapoli, 8 F.3d 909, 913 (2d Cir. 1993); Complaint of Bankers Trust Co., 752 F.2d 874, 887-88 (3d Cir. 1984).  The Defendants also argue that the transcript is not admissible as to Columbia because it was not a party to the CCC proceeding.

The Plaintiff responds that the CCC proceeding addressed the very facts that are at issue in this proceeding: namely, whether the Defendants mismanaged the hotel and casino operations.  It also argues that Columbia was a party because it was an "entity qualifier" in those proceedings.

Rule 804(b)(1) provides an exception to the hearsay rule if the declarant is unavailable as a witness and:

> (A) the testimony was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
> (B) the testimony is now offered against a party who had – or, in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1) (emphasis added).

17

The Court agrees with the Plaintiff that Columbia, though not the applicant for the casino license, was a party to the proceeding because it was an entity qualifier.  As an entity qualifier, it too was investigated by the DGE to see if it qualified to operate the casino's hotel.[4]  Further, representatives of Columbia participated in the CCC proceeding by, inter alia, testifying at length.[5]

The Court also concludes that both Defendants had an opportunity and a similar motive in the CCC proceeding as they have in this adversary proceeding to develop relevant testimony. The subject of the CCC proceeding focused largely on whether the hotel and casino operations were mismanaged.  The predicate of the Plaintiff's complaint in this adversary proceeding is that those operations were mismanaged and, as a result, the Defendants breached their management agreements with the Debtors.  Thus, in seeking the casino license which would allow Wimar to run the casino (and the approval of Columbia as an "entity qualifier" allowing it to run the hotel), both Defendants had a motive in the CCC proceedings that is similar to their motive in defending this adversary proceeding: to establish that they did not mismanage the hotel or casino properties.

---

[4]   See D.I. 233, Ex. A at 78-79.

[5]   See D.I. 236, Ex. A at 5, 30 et seq.

18

Consequently, the Court concludes that the CCC transcript is admissible under Rule 804.  Accordingly, the Court will deny the Fourth Motion in Limine.

E.   Fifth Motion in Limine

In the Fifth Motion in Limine, the Defendants seek to exclude the admission of transcripts of certain depositions taken in another proceeding (the main bankruptcy case).[6]  As in the Fourth Motion, the Defendants argue that they are not admissible under Rule 804 because (1) there is no evidence that the declarants are unavailable and (2) neither Columbia nor Wimar had a "similar motive to develop [that testimony] by direct, cross, or redirect examination."  Fed. R. Evid. 804(b)(1)(B).  The Defendants also argue that the depositions are not admissible under Rule 32 of the Federal Rules of Civil Procedure because the prior action did not involve the same parties or same subject matter.  Maxus Liquidating Trust v. YPF (In re Maxus Energy Corp.), Bankr. No. 16-11501, Adv. No. 18-50489, 2019 WL 2581609, *2-3 (Bankr. D. Del. June 24, 2019).  Specifically, they argue that the main bankruptcy case involved many matters and not the express issues raised in this adversary proceeding.

---

[6]   By agreement of the parties, the transcripts of the depositions of Donna More (June 19, 2008), William Yung III (June 16 and 17, 2008), and Theodore Mitchel (June 20 and September 25, 2008) may be used at trial in the adversary subject to specific objections with respect to individual testimony.  The Plaintiff seeks the admission of additional deposition transcripts.

The Plaintiff responds that currently it intends to use only two depositions taken in the main bankruptcy case, those of Richard Fitzpatrick, a former employee of Defendant Columbia, and Howard Reinhardt, a former employee of Defendant Wimar.  The Plaintiff asserts that those depositions are admissible under both Rule 32 and Rule 804.  It presented evidence that both live beyond the subpoena power of the Court and, therefore, are unavailable under either Rule.[7]

Further, the Plaintiff notes that the depositions were taken in the main bankruptcy case by the Creditors' Committee and a special committee of the Debtors' Board for the express purpose of ascertaining whether there were any claims that the estate had against the Defendants for their mismanagement of the Debtors' casino and hotel properties - exactly the contentions in this adversary proceeding.

The Court agrees with the Plaintiff that the depositions taken in the main bankruptcy case did involve "the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken" in this adversary proceeding.  Fed. R. Civ. P. 32(a)(8).

With respect to whether the parties to the depositions were the same (or predecessors in interest to the current parties), the Court concludes they were.  The Third Circuit has held that

---

[7]     D.I. 237, Ex. B.

> While we do not endorse an extravagant interpretation
> of who or what constitutes a "predecessor in interest,"
> we prefer one that is realistically generous over one
> that is formalistically grudging.  We believe that what
> has been described as "the practical and expedient
> view" expresses the congressional intention: "if it
> appears that in the former suit a party having a like
> motive to cross-examine about the same matters as the
> present party would have, was accorded an adequate
> opportunity for such examination, the testimony may be
> received against the present party."  Under these
> circumstances, the previous party having like motive to
> develop the testimony about the same material facts is,
> in the final analysis, a predecessor in interest to the
> present party.

Lloyd v. Am. Export Lines, Inc., 580 F.2d 1179, 81 (3d Cir.

1978).  In this case, the Creditors' Committee and special

Committee of the Debtors are clearly predecessors in interest to

the Plaintiff.  Under the Plan, the claims investigated by the

Debtor and the Creditors' Committee were assigned by the Debtors

to the Liquidating Trust.  Further, both Defendants were given an

adequate opportunity to participate in the depositions.[8]

In addition, the Court concludes that the subject of the

depositions was the same as this adversary proceeding.  In the

main case, the Debtor and Creditors' Committee were investigating

whether the estate had claims against the Defendants for, inter

alia, mismanaging the casino and hotel properties of the Debtors.

This adversary proceeding resulted from that investigation and

alleges that, in fact the Defendants mismanaged the casino and

hotel properties, thereby breaching their contracts.

---

[8]     D.I. 237 at Exs. C & D.

Thus, the Court concludes that the depositions of Mr. Fitzpatrick and Mr. Reinhardt taken in the main bankruptcy case are admissible in this adversary proceeding under Rule 32 and Rule 804.  Accordingly, the Court will deny the Fifth Motion in Limine.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny the First, Fourth, and Fifth Motions in Limine.  The Court will grant in part and deny in part the Second and Third Motions in Limine.

An appropriate Order is attached.


Dated: April 20, 2020                    BY THE COURT:

                                         Mary F. Walrath
                                         United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TROPICANA ENTERTAINMENT, LLC, | ) | |
| et al., | ) | |
| | ) | Case No. 08-10856 (MFW) |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| LIGHTSWAY LITIGATION SERVICES, LLC | ) | |
| as TRUSTEE OF TROPICANA LITIGATION | ) | |
| TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. No. 10-50289 |
| WIMAR TAHOE CORPORATION f/k/a | ) | |
| TROPICANA CASINOS AND RESORTS, INC. | ) | |
| and COLUMBIA SUSSEX CORPORATION | ) | Rel. Docs. 223, 224, 225, |
| | ) | 226, 227, 233, 234, 235, |
| Defendants. | ) | 236, 237 |

## ORDER

    **AND NOW** this **20th** day of **APRIL, 2020,** upon consideration of the Motions in Limine filed by the Defendants and the Responses of the Plaintiff thereto, it is hereby

    **ORDERED** that the First Motion in Limine is **DENIED;** and it is further

    **ORDERED** that the Second Motion in Limine is **DENIED** without prejudice to the right of the Defendants to move to exclude the expert's opinion after cross-examination at trial; and it is further

    **ORDERED** that the Third Motion in Limine is **GRANTED IN PART AND DENIED IN PART;** and it is further

**ORDERED** that the Fourth Motion in Limine is **DENIED;** and it is further

**ORDERED** that the Fifth Motion in Limine is **DENIED.**

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Joseph Grey, Esquire[1]

---

[1]     Counsel shall distribute a copy of this Order and the accompanying Memorandum Opinion to all interested parties and file a Certificate of Service with the Court.

SERVICE LIST


Herbert Beigel, Esquire
Herbert Beigel & Associates, LLC
38327 S. Arroyo Way
Tucson, AZ 85739
Counsel for the Plaintiff

Joseph Grey, Esquire
Cross & Simon LLC
1105 North Market Street, Suite 901
Wilmington, DE 19801
Counsel for the Plaintiff

Dennis A. Meloro, Esquire
Nancy A. Peterman, Esquire
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
Counsel for the Defendants

George M. Vinci, Jr., Esquire
Neal R. Troum, Esquire
Spector Gadon Rosen Vinci P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
Counsel for the Defendants